Peradotto, J. (dissenting).
We respectfully dissent because, in our view, the three-tiered classification established by the 2008 amendments to the Wicks Law is arbitrary and not reasonably related to the State purpose underlying the law or the amendments. We would therefore reinstate the complaint and *349 declare that the three-tiered classification is unconstitutional under the home rule provisions of the New York State Constitution (see NY Const, art IX, § 2 [b]).
This appeal concerns the validity of the 2008 amendments to a series of statutes collectively referred to as the “Wicks Law” (see e.g. Matter of Diamond Asphalt Corp. v Sander, 92 NY2d 244, 260 [1998], rearg denied 92 NY2d 921 [1998]). As noted by the majority, the Wicks Law requires New York State and its political subdivisions to award separate contracts for three categories of work, i.e., electrical; plumbing; and heating, ventilation, and air conditioning, for public construction projects exceeding a specified monetary threshold (see General Municipal Law §§ 101 [1] [a]-[c]; [2]; 103; State Finance Law § 135; Labor Law § 222 [2] [e]; Public Housing Law § 151-a [1] [a]-[c]; [2]). When the Wicks Law was first enacted in 1912, the initial monetary threshold for projects subject to such separate bidding requirements was $1,000 (see L 1912, ch 514). The threshold was increased to $50,000 in 1961 for State projects (see L 1961, ch 292) and in 1964 for local government projects (see L 1964, ch 572).
The threshold remained at $50,000 until 2008, when the legislature enacted various reforms to the Wicks Law (see L 2008, ch 57, part MM). The 2008 amendments, which went into effect on July 1, 2008 (see L 2008, ch 57, part MM, § 20), increased the monetary threshold to $3 million for the five counties comprising New York City, $1.5 million for the downstate suburban counties of Nassau, Suffolk, and Westchester, and $500,000 for all other counties (see L 2008, ch 57, part MM, § 1). In addition to creating the three-tiered classification among counties, the 2008 amendments established a means for governmental entities to opt out of the Wicks Law requirements by entering into a “Project labor agreement” (see Labor Law § 222 [2] [b]).
Plaintiffs commenced this action challenging the constitutionality of the 2008 amendments and seeking, inter alia, judgment declaring that the amendments are unconstitutional and enjoining their enforcement. In 21 causes of action, plaintiffs allege that the 2008 amendments violate various provisions of the New York State and United States Constitutions, including the home rule provisions of the New York State Constitution (see NY Const, art IX, § 2 [b]) and the Equal Protection Clauses of the State and Federal constitutions (see NY Const, art I, § 11; US Const, 14th Amend, § 1). With respect to the home rule pro *350 visions, plaintiffs allege in their first cause of action that the different monetary thresholds established by the 2008 amendments constitute “an invalidly-enacted special law” that “bears no reasonable relationship to any substantial concern of New York State.” Defendants moved to dismiss the complaint pursuant to CPLR 3211 (a) (3) and (7) on the grounds that plaintiffs lacked standing with respect to certain causes of action and that the complaint failed to state a cause of action. Supreme Court granted the motion and dismissed the complaint (Empire State Ch. of Associated Bldrs. & Contrs., Inc. v Smith, 30 Misc 3d 455 [2010]).
At the outset, we agree with the majority that plaintiffs have standing to challenge the constitutionality of the 2008 amendments under the home rule provisions of article IX of the New York State Constitution. We also agree with the majority that, although the three-tiered classification system created by the 2008 amendments constitutes a “special law,” i.e., a “law which in terms and in effect applies to one or more, but not all, counties” (NY Const, art IX, § 3 [d] [4]), a home rule message was not required inasmuch as the substance of the 2008 amendments bears a direct and reasonable relationship to a substantial State concern (see Patrolmen’s Benevolent Assn. of City of N.Y. v City of New York, 97 NY2d 378, 386 [2001]). The declared purpose of the Wicks Law is “to assure the prudent and economical use of public moneys for the benefit of all the inhabitants of the state and to facilitate the acquisition of facilities and commodities of maximum quality at the lowest possible cost” (General Municipal Law § 100-a). With respect to the 2008 amendments, the legislative history reflects that the Wicks Law monetary thresholds were increased in order to reduce the financial burden on local governments (see generally Sponsor’s Mem, Bill Jacket, L 2008, ch 57). According to documents included in the record before us, the Governor’s Program Bill from a proposed 2007 bill that was substantially similar to the 2008 amendments stated that, since the monetary thresholds were last increased in 1964, “the costs of real estate, labor and materials for public works projects have risen dramatically, subjecting an ever-increasing number of public works contracts to the separate specifications requirements” (2007 NY Senate-Assembly Bill S6146A, A9204). The purpose of the bill was to “recalibrate” the thresholds in order to allow smaller public works projects to “proceed without separate specifications” (id.).
*351 We agree with the majority that raising the monetary thresholds set in 1964 to reflect the increased cost of public construction is reasonably related to both the original purpose of the Wicks Law and the purpose of the 2008 amendments, i.e., to provide local governments with much-needed relief from the financial and administrative burdens imposed by the Wicks Law. We cannot agree with the majority’s further conclusion, however, that the three-tiered classification is rational and reasonably related to those State concerns. “Once a statute is found to involve an appropriate level of State interest, the fact that it effects a classification among the local governments it regulates does not render the enactment invalid, so long as that classification is reasonable and related to the State’s purpose” (Matter of Kelley v McGee, 57 NY2d 522, 540 [1982] [emphasis added]; see Farrington v Pinckney, 1 NY2d 74, 89 [1956]). Contrary to the conclusion of the majority, we conclude that the monetary thresholds underlying the three-tiered classification are arbitrary, and that the classification is not reasonably related to the State interests of: (1) protecting the public fisc by requiring local governments to award multiple contracts for public construction projects; and (2) reducing the burden of the Wicks Law mandate on local governments by exempting smaller projects from its ambit (cf. Farrington, 1 NY2d at 91-92).
Notably, the bill jacket for the 2008 amendments lacks any discussion of the rationale underlying the three-tiered classification system or the justification for the different monetary threshold amounts (see Bill Jacket, L 2008, ch 57). The amendments were passed as part of the 2008-2009 budget bill, and the only portion of the legislative history specifically addressing Wicks Law reform states that the amendments “ advance [ ] increases in Wicks Law thresholds that . . . help reduce property taxes by lowering local construction costs . . . [T]hese thresholds would rise from $50,000 to $3 million in [New York City], $1.5 million in Nassau, Suffolk and Westchester counties, and $500,000 in [all other counties]” (2008-09 New York State Executive Budget Briefing Book, Relieving the Property Tax Burden, http://www.budget.ny.gov/pubs/archive/fy0809archive/ eBudget0809/fy08091ittlebook/PropertyTaxRelief.html). The majority relies on various documents in the record concerning the legislative history for the 2008 amendments as well as documentation in the record that appears to have been generated during the debate on a similar 2007 bill that did not pass the legislature. Former New York Governor Eliot Spitzer originally proposed a *352 two-tiered classification consisting of New York City and the rest of the State, and then amended his proposal to suggest a three-tiered classification. An October 2007 press release from the Governor’s Office asserted that the proposed changes to the Wicks Law would “exempt more than 70 percent of public works projects from Wicks requirements and provide real savings for schools, local governments and other public entities.”
The majority concludes that certain documents issued by the Governor’s Office related to the amendments to the Wicks Law support defendants’ contention that the three-tiered classification was devised to reflect geographically-based differences in construction costs. In support of that contention, defendants cite three documents in the record: (1) a January 2008 State of the State Address “Fact Sheet,” which notes only that proposed amendments to the Wicks Law include “[a] three-tiered threshold system to take into consideration the geographic differences in the cost of construction”; (2) the statement of Assemblyman Joseph D. Morelle during debate over the 2007 proposed bill that “there are differentials and costs that relate from region to region”; and (3) a June 2007 Legislative Gazette article stating that the different thresholds “reflect the geographic difference in construction costs” (Associated Press, Leaders Agree on Reform to Cut Public Building Costs, Legis Gazette, vol 30, No. 41 at 32 [June 18, 2007]).
Notably absent from the record is any discussion of the basis for the monetary thresholds underlying the three-tiered classification. While it is common knowledge that it likely costs more to construct a building in New York City than in municipalities outside metropolitan New York, we conclude that the threshold monetary amounts selected by the legislature must have some factual or evidentiary support beyond the general proposition that the cost of construction is higher in downstate counties than in their upstate counterparts. In other words, the monetary thresholds must be tied to some economic or other objective indicator. Here, the legislative history contains no reference to the basis for the monetary thresholds selected by the legislature. Indeed, the only facts in the record concerning geographic disparities in construction costs appear in documents from the Department of Education detailing regional cost factors for 2006-2009, which were submitted in support of defendants’ motion to dismiss the complaint. Those documents list composite labor rates for each county in New York, i.e., the average hourly labor rate plus supplemental benefits for *353 carpenters, plumbers and electricians. In 2008-2009, the composite labor rate in New York City was $80.57, while the labor rates in the three downstate suburbs were $71.33 for Nassau and Suffolk and $69.58 for Westchester. The composite labor rate in upstate counties during 2008-2009 ranged from a low of $39.59 in Jefferson, Lewis, and St. Lawrence Counties to a high of $69.58 in Dutchess County. The composite labor rates in Erie, Monroe, and Onondaga Counties during that time frame were $46.23, $43.79, and $41.30, respectively. While the above data reflects that the labor costs in New York City may be as much as double or nearly double the labor costs in certain upstate counties, it clearly does not support the six-fold difference in the $3 million threshold applicable to New York City and the $500,000 threshold applicable to the 54 counties north of Westchester County, or the three-fold difference in the $1.5 million threshold applicable to Long Island and Westchester County compared to the $500,000 threshold applicable to upstate counties.
As Assemblyman Morelle stated during the 2007 debate over the monetary thresholds:
“I recognize, as I think most people around the State do, that there are differentials and costs that relate from region to region. There may be differences in cost, and it seems to me an appropriate place for indexing, [but] ... I have a hard time imagining that construction costs between the City of New York and the City of Rochester are a differential [of] six-to-one.”
Indeed, Morelle asserted that the costs of concrete, fuel, and other raw materials are roughly the same around the State. Assemblyman Clifford Crouch, of Binghamton, likewise recognized cost differences around the State, but not to the extent reflected in the three-tiered classification. Of further note, Assemblywoman Ellen Jaffee of Rockland County pointed out that labor costs in her district are nearly equivalent to those in Westchester County, which is across the Hudson River from Rock-land County. Yet Westchester County enjoys a $1.5 million threshold for purposes of the Wicks Law while Rockland County is subject to the $500,000 threshold.
A review of the legislative record clearly indicates that a key purpose of the 2008 amendments was to relieve New York City from much of the burden imposed by the Wicks Law, with the remainder of the State being somewhat of an afterthought. Ac *354 cording to the 2007 Governor’s Program Bill in the record, the changes would “sav[e] New York City over $136 million in the first year alone” (2007 NY Senate-Assembly Bill S6146A, A9204). An April 2008 press release from the Governor’s Office also included in the record touted that the reforms will “reduce [New York] City’s long term capital construction costs by more than $200 million in its upcoming City Fiscal Year (CFY) 2009 Capital Plan, and will carry annual debt service savings of $14 million by CFY 2012,” and further noted that “[localities across the State will also realize millions of dollars more in savings” (Press Release, Governor Paterson Announces Wicks Law Overhaul, Apr. 9, 2008, available at http://www.budget.ny.gov/pubs/ press/2008/enacted0809/enacted0809_wicks.html).
Defendants contend that the three-tiered classification was designed to exempt approximately 70% of all public construction projects from the requirements of the Wicks Law. That figure, which appears several times in the record on appeal, is apparently based upon New York City Mayor Michael R. Bloomberg’s testimony before the Assembly Ways and Means and Senate Finance Committees that the proposed amendments to the Wicks Law “would cover more than 70% of City capital projects, permitting construction to proceed more quickly, efficiently, and at considerably less cost” (emphasis added). There is nothing in the record to indicate that the $500,000 threshold applicable to the 54 upstate counties will cover 70% or even 50% of the capital projects in those communities. Indeed, the record includes an editorial from the Daily Freeman newspaper, covering the mid-Hudson region, which states that “[y]ou’d have a hard time building a couple of wheelchair ramps at some public buildings for less than $500,000, meaning the reformed limits mean little for the vast majority of potential municipal projects” (.Eroding the Wicks Law, Daily Freeman, Apr. 16, 2008). The Binghamton City School District’s director of facilities and operations was quoted in a Press & Sun-Bulletin article, also included in the record, as stating that, “[i]n today’s dollars, $500,000 doesn’t get you a lot of work.” Similarly, an April 2008 Watertown Daily Times editorial asserted that the 2008 amendments “will have very limited impact in Northern New York,” pointing to “all the school construction or other public building projects that far exceed the $500,000 threshold” (Albany Secrecy No Chance to Debate Wicks Law Changes, Watertown Daily Times, Apr. 13, 2008). Indeed, Assemblyman Marcus Molinaro of Dutchess County stated that “$500,000 couldn’t even barely build a home in [his] community.”
*355 We thus conclude that the three-tiered classification established by the 2008 amendments is arbitrary and not reasonably related to the stated purpose of the amendments, i.e., to “provide fiscal relief and increased flexibility for local governments” while at the same time maintaining the Wicks Law goal of fostering the “prudent and economical use of public moneys for the benefit of all the inhabitants of the [S]tate” (General Municipal Law § 100-a). In reaching this conclusion, we are cognizant of the general presumption, cited by the majority, that “the Legislature has investigated and found facts necessary to support the legislation” (Hotel Dorset Co. v Trust for Cultural Resources of City of NY., 46 NY2d 358, 370 [1978]). In this case, however, the record belies that presumption. Although a tiered classification system based on geographic disparities in construction costs may be reasonable and appropriate, the specific monetary thresholds in this case are arbitrary and unsupported by the legislative record. Accordingly, we would modify the judgment by reinstating the complaint, and we would declare that those parts of the 2008 amendments to the Wicks Law establishing the three-tiered classification are unconstitutional and enjoin defendants from enforcing the disparate thresholds.
Fahey and Carni, JJ., concur with Sconiers, J.; Peradotto, J., and Centra, J.P., dissent in a separate opinion by Peradotto, J.
Ordered that the judgment so appealed from is modified on the law by denying defendants’ motion to the extent that it sought dismissal of the complaint, reinstating the complaint insofar as declaratory relief was sought, and granting judgment in favor of defendants as follows: It is adjudged and declared that the 2008 amendments to the Wicks Law are valid and constitutional and as modified the judgment is affirmed without costs.